George H. Nicols, J.
In this article 78 proceeding, petitioner, employed by the Board of Education, City of New York, seeks a judgment directing the Board of Education Retirement System to retire him on a service connected disability pension retroactive to January 10, 1966.
Petitioner’s employment with the City of New York has been continuous since 1951. He had been employed as a Housing Fireman and as a Maintenance Man. In October of 1958, without a break in service, he was appointed a Steamfitter’s Helper and in 1961 was provisionally promoted to Steamfitter. The petition discloses that up until January 10, 1966, petitioner indulged in many forms of athletic activities and performed arduous and laborious work as a Housing Fireman, Maintenance Man, Steamfitter’s Helper and Steamfitter without any physical discomfort or pain.
On January 10, 1966, while attempting to remove a radiator which had an approximate weight of 300 pounds, petitioner experienced sharp pains across his chest and heart. The accident was reported and petitioner was sent home. The following day, January 11, 1966, he was admitted to Doctor’s Hos *343 pital of Staten Island and was discharged on February 1,1966. Petitioner was on sick report until March 15, 1966. Thereafter, he was placed on light duty for1 approximately six months and was assigned to office and clerical functions. He was then restored to full duty.
On October 17, 1967, while working on top of a 10-foot ladder using a hacksaw to cut pipes, petitioner suffered a second attack. He was sent home. The following day and on October 18, 1967, he was again admitted to Doctors Hospital and discharged on October 25, 1967. Petitioner was placed on sick report on October 25, 1967 and has not worked since that time.
Petitioner filed for workmen’s compensation and, after a contested hearing, it was determined that the injuries sustained by him arose out of and in the course of his employment and were causally related, and fixed his disability as of January 11,1966. Additionally, according to the schedules, commencing May 2, 1968, the United States Department of Health, Education and Welfare, Social Security Administration, after a hearing and examination, found petitioner totally disabled and he was awarded disability payments. To digress from the factual dissertation herein, the memorandum decision by my learned colleague, Mr. Justice Dickens, sitting in Special Term, Part I, New York County, in Matter of Alexander v. New York City Employees’ Retirement System (N. Y. L. J., Feb. 5, 1973, p. 2, col. 2) is quite pertinent. In that case, petitioner, a female correction officer, was severely injured when a large framed picture fell off the wall and struck her on the head while having dinner at the Women’s House of Detention. The Retirement System denied her claim for a service connected disability pension. In overruling the Retirement System and in directing the issuance of a line-of-duty pension, Mr. Justice Dickens held:
“ Petitioner offers decisions by two government agencies having much wider experience than respondent’s medical board in evaluating work connected disabilities. The Workmen’s Compensation Board of the State of New York after a hearing on May 8,1972 (after respondent’s denial of retirement) found ‘ that the claimant had a further continuing causally related disability subsequent to April 12,1971, and as of a result of the accident of this folder dated June 9, 1970. Further treatment is indicated.’
“ On Sept. 27, 1972, an Administrative Law Judge of the U. S. Department of Health, Education and Welfare determined her claim. ‘ After careful consideration of all the evidence *344 of record, the Administrative Law Judge finds that the disability earning requirements are met’.”
On November 21, 1967, petitioner herein filed an application for disability retirement. By letter dated March 15, 1968, petitioner was advised by the Division Chief of the Betirement System that the Medical Board of the Betirement System had disapproved his application. By letter dated May 14, 1968, petitioner was advised that the Board of Betirement at its meeting confirmed and adopted the recommendation of its Medical Board that petitioner was not disabled in the performance of his duties on January 10, 1966. Significantly, no reference was made to the second accident of October 17, 1967.
Petitioner did not contest the adverse determination made on May 14, 1968. Petitioner alleges, however, that his condition as a result of the two line-of-duty accidents has become progressively worse requiring constant medical care and further hospitalization. In addition to coronary insufficiency and myocardial infarction, a psychiatric examination has revealed psychoneurosis and an anxiety reaction.
On September 15, 1972, petitioner filed a second application for a service connected disability pension. Bespondents on October 3, 1972, refused to take any action claiming that its denial on May 14, 1968, in effect terminated the matter. This proceeding was then instituted on December 4, 1972. Bespondents claim that petitioner is barred by the four months’ Statute of Limitations.
While an article 78 proceeding is statutory, the relief it affords is equitable in nature. While citations are illuminating, it is not too rewarding for in this area of the law no broad general rule of law may be enunciated. Bach case will have to be decided on its own facts.
The government in the treatment of its employees has been held to a high standard of social justice. Chief Judge Crane, writing unanimously for the court in Wood v. City of New York (274 N. Y. 155, 161), held: “ The civil service provisions of the Constitution and of the law were intended as a protection for the public and all the employees in the civil service as well as security for the individual employee.” A court of law represents the conscience of the Nation. The law is not an end in itself. It is a means to an end. Its primary purpose is to reach the ends of justice between men and between the employee and his government employer. If it fails in that one thing, it fails in everything.
*345 CPLR 217 provides: “ a proceeding against a body or officer must be commenced within four months after the determination to be reviewed becomes final and binding upon the petitioner ”. The words “ final ” and “ binding ” in the statute presuppose legality and validity. A landmark decision in this area of the law is Matter of Castaways Motel v. Schuyler (24 N Y 2d 120), wherein Judge Keating, writing unanimously for the Court of Appeals in reversing the Appellate Division, held that, in dealing with the dilatory defense of the Statute of Limitations, the court should resolve any ambiguity, uncertainty or doubt created by the public body against it in order to reach a determination on the merits and not to deny a party his day in court. In construing CPLR 217, the court held (pp. 126-127):
“Nevertheless, the letter of October 20, 1966 was not a 1 final and binding ’ determination within the meaning of CPLR 217. The letter is certainly ambiguous on the point. It speaks of the ‘ covenant requested ’ by the Authority and refers to the ‘ patent that we are issuing ’ to petitioner. If there was anything final in the letter, it was that the patent was being granted. The ‘ final and binding determination ’ here ran from the date of the second letter where for the first time it was explicitly stated that the signing of the release was a prerequisite for the granting of the patent.
“ The drafters of the Civil Practice Law and Rules, when considering various amendments to the Civil Practice Act dealing with Statutes of Limitation, had as one of their proposals before them a provision which would have stated that the statute should begin to run when there had been a demand and an ‘ express or implied ’ refusal (8 Weinstein-Korn-Miller, N. Y. Civ. Prac., ¶ 7804.02). This provision was rejected, however, for the very reason that it imposed an unfair burden on the attorney and on the public to determine when an implied refusal had occurred. In drafting the section which is now the law, every attempt was made to avoid putting a party or his counsel in a position of having to guess when a ‘ final and binding ’ determination had been made. The burden was put on the public body to make it clear what was or what was not its determination. In dealing with this dilatory defense the courts should resolve any ambiguity created by the public body against it in order to reach a determination on the merits and not deny a party his day in court.” It is abundantly clear that the Statute of Limitations was never intended to be used as a sword. The eases are legion which hold that the Statute of Limitations may not be utilized as a defense where the *346 wrong is of a continuing nature (Matter of Smith v. McNamara, 277 App. Div. 580; Matter of Cash v. Bates, 301 N. Y. 258; and Matter of O’Connor v. New York City Tr. Auth., 144 N. Y. S. 2d 409, mod. and affd. 1 A D 2d 799).
There can be no question but that the action of the Board of Retirement herein in accepting the recommendation of its Medical Board without making its own independent investigation and determination was contrary to Matter of Brady v. City of New York (22 N Y 2d 601); Matter of Bennett v. Board of Trustees of Police Pension Fund of City of N. Y. (16 N Y 2d 562); Matter of Manza (N. Y. L. J., Feb. 20, 1973, p. 2, col. 2); Matter of Sorrentino (N. Y. L. J., Feb. 26, 1973, p. 2, col. 2); and the recent decision by the Appellate Division, First Department, in Matter of Centauro v. Board of Trustees of N. Y. Fire Dept. Article 1-B Pension Fund (41 A D 2d 626).
Petitioner, however, is not only relying on the invalidity and impropriety of the determination made by the Board of Retirement on May 14, 1968 — he filed Ms second application for disability retirement on September 15, 1972, claiming that the two reported line-of-duty accidents have progressively deteriorated and that he is now physically, medically and mentally incapacitated. Section 17 of the Rules and Regulations of the Board of Education Retirement System requires that an application for retirement should be filed ‘‘ within two years from the happening of such accident.” This was complied with, There is, however, nothing in the section or law which proscribes the submission of a new application especially where the injury, or medical and physical disability becomes progressively worse and the body more infirm. In Matter of O’Hara v. Monaghan (N. Y. L. J., Jan. 5, 1954, p. 8, col. 5) the petitioner, filed an application for a service connected disability pension in 1951 for an old injury he sustained in 1914. Mr. Justice Corcoran granted the application and the Court of Appeals affirmed (309 N. Y. 931).
Disability pensions are to be liberally construed. Its presence in the law betokens an intent to grant its beneficent provisions to civil service employees disabled in the line of duty. It is axiomatic that determinations of any city agency are not sacrosanct. It is the duty of the courts to set at naught arbitrary and unfounded administrative holdings (Matter of Pincus v. Department of Personnel, Jan. 5, 1973; Camperlengo v. State Liq. Auth., 16 A D 2d 342; and Matter of Shalbach v. State Liq. Auth., 7 N Y 2d 518).
*347 Petitioner herein is 50 years of age, married, and the father of three children. He has been employed by the City of New York continuously since 1951. His record of' employment has been more than satisfactory. Young in years but now old in body because of the injuries received in the line of duty, he was compelled to litigate a claim for accident disability which the Workmen’s Compensation Board found to be causally related and arising out of and in the course of his employment. The United States Government has found him to be totally disabled. His transformation from a preline-of-duty condition of robust health to a postline-of-duty condition of broken physical and mental health caused by the accidents compels this court to grant the petition.